NOTICE
Decision filed 09/06/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 190285

NOS. 5-19-0285, 5-19-0286, 5-19-0287, 5-19-0288 (cons.)

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MARTHA CUSTER, *et al.*, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 14-L-425; 09-L-657; |
| | ) | 09-L-527; 09-L-295 |
| | ) | |
| CERRO FLOW PRODUCTS, INC., *et al.*, | ) | Honorable |
| | ) | Andrew J. Gleeson, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Chapman and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    This expedited appeal arises from an eleventh-hour dispute between the parties that erupted after the jury had been selected, but prior to it being sworn. Plaintiffs' motion for sanctions culminated in an order by the trial court striking the pleadings of Cerro Flow Products, Inc. (Cerro), after Cerro informed the court that it could not comply with the court's order requiring disclosure of thousands of documents that Cerro claimed were protected by the attorney-client privilege and other privacy laws. Thereafter, Cerro filed a motion to stay the trial proceedings, which the trial court denied. Cerro then filed an emergency motion to stay the trial proceedings in this court, which was granted. For reasons that follow, we vacate the trial court's order denying Cerro's motion to stay the proceedings, the order requiring Cerro to produce all

1

ESI material directly to plaintiffs, and the order striking the pleadings of Cerro; we lift our stay order; and we remand the case with directions. The court further directs the clerk of the court to issue the mandate forthwith.

¶ 2                                    PROCEDURAL HISTORY

¶ 3     The following procedural history has been gleaned from the limited record before us. On July 10, 2019, one day before the scheduled jury trial of this case, plaintiffs filed a motion for sanctions based on alleged discovery violations by Cerro. Plaintiffs alleged that in the days before trial, Cerro sought to "claw back" several documents it claimed were protected by attorney-client privilege, but which had been inadvertently produced to plaintiffs. Plaintiffs also alleged that Cerro had withheld thousands of pages of documents containing electronically stored information (ESI) on grounds of privilege and had failed to provide an accompanying privilege log, as required under Illinois Supreme Court Rule 201(n) (eff. July 30, 2014). Plaintiffs asserted that in lieu of a privilege log, Cerro had produced only a "rudimentary search term list" used by Cerro to identify individuals and terms that were allegedly found in this unknown quantity of ESI that Cerro claimed was privileged. Plaintiffs claimed that Cerro's conduct constituted a deliberate and blatant disregard of Illinois discovery rules and moved for sanctions pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) in the form of a default judgment or an order to strike Cerro's affirmative defenses. In the alternative, plaintiffs requested that the court disallow Cerro from claiming any sort of privilege for documents that were produced without a privilege log and order Cerro to immediately produce any other documents that may have been withheld pursuant to a claim of privilege directly to plaintiffs for their review.

¶ 4     Plaintiffs did not identify or attach the original interrogatories or requests for production that were the basis for their motion for sanctions, and there is nothing in the record to indicate

2

the nature or relevancy of the specific ESI materials in dispute. Plaintiffs did attach the eight-page search term list, along with four email messages. The first email, dated March 8, 2019, was from Cerro's counsel to plaintiff's counsel, with a subject line referencing ESI, and stated as follows:

"We expect to start producing documents on a rolling basis in batches of around 20,000 documents. I'm not sure how large the total production will be as we are still reviewing it. We can produce the documents in either a load file with images or as PDFs. Please let us know your preference.

We do not have a privilege log. The search terms on the attached list were run across the entire set of data to identify any document involving Cerro's lawyers or law firms. Any document with a hit on one of these terms was put into the 'privileged' pile. The 'privileged' pile was then checked to verify that the search terms were appropriately identifying privileged documents, which they were."

The second pair of emails were dated June 25, 2019, and consisted of an email exchange between plaintiffs' counsel and Cerro's counsel, with a subject line referencing ESI. The email from plaintiffs' counsel to Cerro's counsel at 11:32 a.m. made the following inquiry:

"Were any documents withheld from the recent document productions? If so, please provide a privilege log. If not, please confirm in writing."

At 3:33 p.m. that same date, Cerro's counsel replied:

"See below our response on this issue from early March." [1]

The fourth email, dated July 8, 2019, from Cerro to plaintiff's counsel, had a subject line "Cerro – claw back of document" and stated:

---

[1] Reference was being made to the March 8, 2019, email from Cerro to plaintiffs' counsel.

3

"Document bates labeled CCU 121798-121799 (which appears on your exhibit list) is a privileged letter dated 5/5/87 from Dick Kissel, outside counsel to Cerro, to Cerro's employee Sandy Silverstein. This document was inadvertently produced by Cerro. I write to advise you that Cerro is asserting the attorney-client privilege as to this document, and hereby claws it back from its document production."

Plaintiffs acknowledged in their motion for sanctions that they had not previously filed a motion to compel compliance with the discovery request.

¶ 5    On July 11, 2019, the parties appeared for trial in the circuit court and proceeded with jury selection. There is no indication in the record that plaintiffs presented their motion for sanctions to the trial court for a ruling prior to the commencement of *voir dire*. Instead, the parties proceeded with jury selection, and, apparently, a panel of jurors was selected, but they were not sworn and impaneled that afternoon.

¶ 6    The next morning, July 12, 2019, prior to impaneling the jury, plaintiffs asked the trial court to consider two motions. The first motion is not relevant to this appeal. In their second motion, plaintiffs asked the court to sanction Cerro for its failure to abide by the rules of discovery. Cerro had filed its response to plaintiffs' motion prior to the court hearing argument from counsel. The trial court allowed each side to address the allegations in plaintiffs' motion for sanctions.

¶ 7    Plaintiffs' counsel advised the court that the motion for sanctions was instigated in response to a July 8, 2019, email from Cerro advising that it had inadvertently produced a letter, dated May 4, 1987 (5/4/87 letter), which Cerro claimed was subject to the attorney-client privilege. Cerro's counsel had informed plaintiffs that Cerro was asserting its right to "claw back" that document, preventing its use at trial. Plaintiffs' counsel stated that the "5/4/87 letter"

4

indicated that the EPA had a study related to an investigation regarding the concentration of dioxin in the Dead Creek Cahokia area.[2] Plaintiffs' counsel argued that Cerro's claim of attorney-client privilege was not proper because three other people, who were neither employees nor attorneys for Cerro, had been copied on the letter. Plaintiffs' counsel stated that they believed the defense had withheld "who knows how many documents under the auspice that they are privileged," and asserted that this letter was the "tip of the iceberg."

¶ 8     The trial court then asked Cerro's counsel whether the "5/4/87 letter" was privileged. Cerro's counsel replied that the letter was privileged, as it was written by Cerro's outside counsel and was directed to an employee of Cerro. Cerro further identified the persons copied on the letter as a second employee of Cerro, outside counsel for Cerro, and an internal consultant. Cerro's counsel stated that the consultant was housed at Cerro and consulted on these environmental issues in anticipation of litigation. Cerro's counsel also explained that the "5/4/87 letter" had been marked as an exhibit during the deposition of a Cerro corporate representative in October 2017. When plaintiffs' counsel began to question the deponent about that exhibit, Cerro objected and asserted that the document may be privileged and was inadvertently produced. Cerro reserved the right to retrieve the document pursuant to a "claw back" agreement agreed to between the parties, and plaintiffs' counsel acknowledged same. Attached to Cerro's response were excerpts from an October 19, 2017, deposition transcript wherein there was a discussion regarding the potential "claw back" of the "5/4/87 letter."

¶ 9     The court did not make any findings with respect to whether the "5/4/87 letter" was or was not privileged. Noting that "we are here at trial," the court asked Cerro's counsel how it was that there was no privilege log. Cerro's counsel responded by alleging that plaintiffs were

---

[2]According to the transcript of the hearing, the "5/4/87 letter" was shown to the trial judge, but it was neither marked as an exhibit nor made part of the record. Thus, it is not available for our review.

misrepresenting what had occurred over the past several years as it related to discovery and privilege logs. Cerro's counsel explained that there were two different types of discovery at issue—paper documents and ESI materials. Cerro's counsel stated that Cerro had provided an item-by-item privilege log for its paper discovery, and that this dispute arose because Cerro had exercised its rights under the "claw back" agreement related to the inadvertently produced "5/4/87 letter" which Cerro claimed was privileged. In its responsive pleading, Cerro had attached the 63-page privilege log it had given to plaintiffs' counsel regarding the production of paper discovery and indicated to the court that this privilege log had been available to plaintiffs for years.

¶ 10    Cerro's counsel next addressed plaintiffs' allegation that it had failed to produce a privilege log for its ESI discovery. Cerro explained that as of August 2017, counsel for both parties had discussed a process for identifying potentially privileged or confidential ESI materials. According to Cerro's pleadings and its arguments before the court, Cerro identified custodians from within its company who might be in possession of information responsive to plaintiffs' discovery requests. Cerro then segregated approximately three million ESI documents and used several search terms to examine the contents of the ESI to identify any documents that might be subject to attorney-client privilege or work product privilege. Using these search terms, Cerro then culled the privileged documents and produced the remaining non-privileged documents to plaintiffs. Cerro claimed it had produced a list of the search terms to plaintiffs' counsel. Cerro represented to the court that plaintiffs had not objected to this process or to the storage of the collected data, but had waited until June 25, 2019, only 16 days before the trial setting, to request a privilege log.

¶ 11    In further support of Cerro's argument, the court heard from attorney Jeffrey Spoerk, one of Cerro's attorneys. Spoerk stated that on September 1, 2017, he had a discussion with an attorney representing plaintiffs. Spoerk indicated that he had fully explained the process to plaintiffs' counsel, who voiced no opposition at that time. Cerro further explained that its lawyers spot checked samples of the retained documents to make sure that the search terms revealed validly withheld documents.

¶ 12    Plaintiffs' counsel argued that Cerro was reminded in March 2019, prior to the start of another trial, that Cerro had failed to produce any ESI. In response, Cerro's counsel indicated that when asked in March 2019, Cerro informed plaintiffs' counsel that it was screening its ESI for privileged communications using search terms and that Cerro was not preparing a document-by-document privilege log. Cerro again claimed that plaintiffs had not objected to this process in March, nor had they requested a privilege log at that time. Cerro's counsel also noted that plaintiffs' motion for sanctions did not contain any certification by plaintiffs' counsel that the parties had attempted to resolve the discovery dispute through the "meet and confer" process, as required by Supreme Court Rule 201(k), nor had plaintiffs filed a motion to compel prior to filing their motion for sanctions.

¶ 13    Plaintiffs' counsel indicated that the remedy it was requesting was an order requiring Cerro to produce all ESI documents withheld under a claim of privilege to plaintiffs' counsel so that counsel could review them. Cerro's counsel argued that because plaintiffs had agreed to Cerro's proposed method for identifying privileged ESI materials, plaintiffs should be estopped from using the lack of a privilege log as a basis for such a severe discovery sanction. In addition, as a part of its responsive pleading, Cerro argued that plaintiffs had not satisfied the factors necessary for the imposition of such a drastic sanction as a default judgment.

¶ 14    At the conclusion of the morning hearing on July 12, 2019, the court stated that unless there was some agreement by the parties, the court was bound by the rules of discovery, and that the rules required a party who is claiming a privilege to provide a privilege log. The court ordered Cerro to produce all the electronically stored information by 3 p.m. that same afternoon or produce a privilege log. The hearing was then adjourned.

¶ 15    Subsequent to the morning hearing, Cerro filed a supplemental response to plaintiffs' motion, accompanied by an affidavit from Jeffrey K. Spoerk, further outlining the agreement with respect to the handling of Cerro's ESI, and identifying the email exchanges between himself and plaintiffs' counsel regarding the agreement dated August 30, 2017, and September 1, 2017. Also attached was the March 8, 2019, email referenced above, and the subsequent June 25, 2019, email from plaintiffs' counsel to Cerro's counsel, asking:

> "Were any documents withheld from the recent documents productions? If so, please provide a privilege log. If not, please confirm in writing."

As discussed previously, Cerro's replied that same day, indicating that plaintiffs' counsel should, "See below our response on this issue from early March."

¶ 16    For reasons not apparent from the record, the circuit court reconvened a hearing on the afternoon of July 12, 2019. Cerro filed a motion to stay the case to allow it time to prepare a privilege log. Cerro's counsel informed the court that it would not be physically possible to produce the documents that day. Counsel further stated it could not comply with the court's order because the documents contained privileged information, including materials potentially protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. No. 104-191, 110 Stat. 1936, 45 C.F.R. §§ 160-164 (2005)).

¶ 17    The trial court acknowledged that it may have been difficult to produce the voluminous materials within the time allotted by its original order. The court then directed Cerro to produce the documents by noon the following day, Saturday, July 13, 2019. Cerro's counsel again indicated that it would not be physically possible to produce the documents within the time frame ordered by the court, and that Cerro could not turn over documents that were subject to attorney-client privilege or another legal privilege. Cerro's counsel again requested a stay of the proceedings. The trial court stated that it had "an obligation to ensure that the parties abide by the Court's orders." The court struck Cerro's pleadings and directed the parties to proceed with the trial on the following Monday morning, with the issues limited to damages only.

¶ 18    On Monday, July 15, 2019, Cerro filed a motion to reconsider the order striking its pleadings. Cerro asked the trial court to deny plaintiffs' motion for sanctions or to issue an order continuing the trial date and directing Cerro to produce an ESI privilege log on or before August 12, 2019. In the alternative, Cerro asked the court to find it in "friendly contempt" for its failure to comply with the court's order and stay the trial pending appeal. The court denied Cerro's motion to reconsider or to stay the trial. Cerro then filed a notice of appeal under Supreme Court Rule 307(a)(1) and an emergency motion in this court to stay the trial under Supreme Court Rule 305(b). On July 15, 2019, this court granted Cerro's emergency motion to stay the proceedings. On July 17, 2019, this court denied plaintiff's motion to reconsider the stay order and instituted an expedited briefing schedule. Given that this is an expedited case, and that the issues have been fully briefed by the parties, we have determined that this matter can be decided without oral argument. Ill. S. Ct. R. 352(a) (eff. July 1, 2018).

9

¶ 19                                ANALYSIS

¶ 20    Initially, we address plaintiffs' argument that this court is without jurisdiction to hear this appeal. Plaintiffs claim that Cerro is seeking review of a pure discovery order imposing sanctions, and that such orders are not subject to review under Illinois Supreme Court Rule 307(a)(1).[3] Cerro contends that an order denying a motion to stay is treated as the denial of an injunction and immediately appealable under Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010). We agree with Cerro's position that this court has jurisdiction to review the trial court's denial of the motion to stay proceedings.

¶ 21    Supreme Court Rule 307(a)(1) provides that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010). Our supreme court has held that Rule 307(a)(1) confers jurisdiction to review orders granting or denying a stay of proceedings because a stay is considered injunctive in nature. See, *e.g., Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001); *In re A Minor*, 127 Ill. 2d 247, 260-61 (1989). Rule 307 permits the interlocutory appeal of a stay of court proceedings because a stay is considered injunctive in nature, and so an order granting or denying a stay fits squarely within Rule 307(a). *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 33.

---

[3]Plaintiffs cited *People ex rel. Scott v Silverstein*, 87 Ill. 2d 167 (1981), in support of their position. In *Silverstein*, the trial court denied a reporter's motion to quash a subpoena for a deposition, concluding that the reporter had waived all rights to assert a privilege under the Reporter's Privilege Act. *Silverstein*, 87 Ill. 2d 167. On appeal, the appellate court determined that the court's order was a final and appealable order. The Illinois Supreme Court reversed, concluding that the order was interlocutory, and not a final and appealable order under Supreme Court Rule 301. The court specifically noted that no party in the case had argued that jurisdiction was conferred under Rules 306, 307, and 308. Subsequently, the supreme court has issued decisions allowing interlocutory review under Supreme Court Rule 307(a)(1), where the interlocutory order is injunctive in nature. See, *e.g.*, *In re A Minor*, 127 Ill. 2d 247, 260-61 (1989).

¶ 22    Here, the trial court's denial of the motion to stay effectively required Cerro to either produce thousands of ESI documents to plaintiffs, potentially exposing privileged communications and confidential health documents without any *in camera* review by the court, or suffer a default judgment. The records reveal that Cerro has not waived its right to assert the attorney-client privilege related to the paper document production, as there is a comprehensive privilege log produced for the paper discovery. And there is nothing in the record that would allow this court to opine on whether Cerro waived its right to claim attorney-client privilege for the ESI, as this is at the heart of the dispute between the parties, and the trial court has not yet had the opportunity to conduct an evidentiary hearing regarding this issue. Moreover, Cerro cannot waive the rights of third parties to the protections of HIPAA.

¶ 23    We recognize that purely ministerial or administrative discovery orders which regulate only procedural details of the litigation do not come within the realm of injunctive relief, but here the trial court's order served to regulate more than the procedural details of the litigation before the trial court. *In re A Minor*, 127 Ill. 2d at 261-62; *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 26. Thus, the court's order denying the stay and directing Cerro to produce potentially privileged documents had an injunctive effect apart from this litigation, the effect of which could not be undone if the order was subsequently found erroneous. For the foregoing reasons, we conclude that the trial court's order denying a stay of the proceedings was not purely ministerial and effectively enjoined Cerro from asserting its right to claim the attorney-client privilege and from protecting the legal privileges of third parties. *In re A Minor*, 127 Ill. 2d at 261-62; *In re Marriage of Lombaer*, 200 Ill. App. 3d 712, 721 (1990). Therefore, we conclude that the trial court's order is reviewable under Rule 307(a)(1).

¶ 24    We now consider the propriety of the trial court's decision to deny Cerro's motion to stay the trial. Our review necessarily includes an assessment of the trial court's order striking Cerro's pleadings after Cerro voiced its refusal to comply with the court's order directing it to produce several thousand electronically stored documents, which Cerro claims were privileged, directly to plaintiffs.

¶ 25    Discovery in civil actions in Illinois is governed by an orderly and fairly comprehensive set of procedures set out in Illinois Supreme Court Rules 201 through 224. Supreme Court Rule 201 identifies several of the general principles pertaining to discovery. Ill. S. Ct. R. 201 (eff. July 30, 2014). Rule 201(a) provides that information may be obtained through depositions via oral examination or written question, written interrogatories, discovery of documents or tangible things, inspection, requests to admit and physical or mental examinations of persons. Rule 201(a) further provides that the duplication of discovery methods to obtain the same information and that discovery requests which are disproportionate in terms of burden and expense should be avoided. The use of interrogatories and requests for production of documents are specifically addressed in Supreme Court Rule 213 (eff. Jan. 1, 2018) and Supreme Court Rule 214 (eff. July 1, 2018). Under each of these rules, objections to a discovery request shall be heard by the court "upon prompt notice and motion" of the party propounding the discovery request. Ill. S. Ct. Rs. 213(d), 214(c).

¶ 26    Supreme Court Rule 201(b) addresses the scope of discovery and permits a party to "obtain by discovery full disclosure" pertaining to "any matter relevant to the subject matter involved in the pending action *** including *** documents or tangible things." Ill. S. Ct. R. 201(b). Documents include papers, photographs, films, recordings, memoranda, books, records, accounts, communications, and ESI. Ill. S. Ct. R. 201(b). ESI is defined as "writings, drawings,

12

graphs, charts, photographs, sound recordings, images, and other data or data compilations in any medium from which electronically stored information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Ill. S. Ct. R. 201(b)(4). The rule also recognizes that certain matters may be privileged, including attorney-client communications, work product, and the identity, opinions, and work product of consultants. Ill. S. Ct. R. 201(b).

¶ 27      Supreme Court Rule 201(k) provides that the parties "shall facilitate discovery under these rules and shall make reasonable attempts to resolve differences." Ill. S. Ct. R. 201(k). "Every motion with respect to discovery shall incorporate a statement that counsel responsible for trial of the case after personal consultation and reasonable attempts to resolve differences have been unable to reach an accord or that opposing counsel made himself or herself unavailable for personal consultation or was unreasonable in attempts to resolve differences." Ill. S. Ct. R. 201(k).

¶ 28      Supreme Court Rule 201(n) addresses claims of privilege in discovery and provides that any claim of privilege must be expressly made and supported by a description of the nature of the documents, communications, or things not produced or disclosed and the exact privilege which is being claimed.  Ill. S. Ct. R. 201(n).  The purpose of this rule is to enable the trial court to evaluate the applicability of the asserted privilege and determine the need for an *in camera* inspection of the documents, and to minimize disputes between the parties. *Thomas v. Page*, 361 Ill. App. 3d 484, 497 (2005).

¶ 29      Supreme Court Rule 201(p) provides that where information is inadvertently produced in discovery and is subject to a claim of privilege or work product protection, the party claiming privilege may notify any party that of the claim and basis for it. Rule 201(p) further provides that

13

after being notified, each party who received the privilege document must promptly return, sequester, or destroy the information and any copies, and must not disclose the content. Ill. S. Ct. R. 201(p). The receiving party may also promptly present the information to the trial court under seal for a determination of the claim, and the producing party must also preserve the information until the claim is resolved. Ill. S. Ct. R. 201(p). This rule incorporates the so-called "claw back" provision and sets forth the procedures to be followed when there is an inadvertent disclosure.

¶ 30    Supreme Court Rule 218 (eff. July 1, 2014) addresses case management and provides in pertinent part that the parties and court shall consider "any other matters which may aid in the disposition of the action including but not limited to issues involving electronically stored information and preservation." The Committee Comments indicate that this provision was intended to encourage parties to resolve issues concerning electronic stored information early in the case. Ill. S. Ct. R. 218, Committee Comments (rev. May 29, 2014). Rule 218 directs that all dates set for the disclosure of witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence, unless otherwise agreed by the parties. Ill. S. Ct. R. 218. Under Supreme Court Rule 201(f), the trial of a case shall not be delayed to permit discovery unless due diligence is shown. Ill. S. Ct. R. 201(f).

¶ 31    Although our civil discovery rules provide for a broad scope of discovery, parties engaged in litigation do not sacrifice all aspects of privacy, confidentiality, and privilege. *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 31. The rules of discovery require that the information being sought is both relevant and proportional. *Carlson*, 2016 IL App (2d) 151248, ¶ 35. The compelled disclosure of highly personal information having no bearing on the issues in

14

the lawsuit is an unconstitutional invasion of privacy. *Carlson*, 2016 IL App (2d) 151248, ¶ 37 (citing *Kunkel v. Walton*, 179 Ill. 2d 519, 538-39 (1997)).

¶ 32    Discovery is intended to be, and should be, a cooperative undertaking by counsel and the parties conducted largely without court intervention. *Williams v. A.E. Staley Manufacturing Co.*, 83 Ill. 2d 559, 565-66 (1981). It is undertaken for purposes of ascertaining the merits of the case and thereby promoting a fair settlement or a fair trial. *Williams*, 83 Ill. 2d at 565-66. When disagreements or perceived abuses of discovery arise, the trial court is authorized to enter orders of protection and to supervise discovery. Ill. S. Ct. R. 201(c). In supervising discovery, the trial court may determine whether the likely burden or expense of the proposed discovery, including electronically stored information, outweighs the likely benefit, taking into account the amount in controversy, the resources of the parties, the importance of the issues in litigation, and the importance of the requested discovery in resolving those issues. Ill. S. Ct. R. 201(c).

¶ 33    Supreme Court Rule 219 addresses the consequences of refusal to comply with the rules or an order related to discovery and provides for the imposition of a variety of sanctions. Ill. S. Ct. R. 219 (eff. July 1, 2002). The purpose of imposing a sanction is to coerce compliance with discovery rules, not to punish the noncompliant party. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). A sanction that results in a default judgment is a drastic sanction which should be invoked only in those cases where the party's action shows a deliberate, contumacious, or unwarranted disregard of the court's authority. *Shimanovsky*, 181 Ill. 2d at 123. There are several factors that a trial court is to consider in determining what sanction, if any, to apply: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the evidence; and (6) the good

15

faith of the party offering the testimony. *Shimanovsky*, 181 Ill. 2d at 124. No one single factor is determinative, and the court is to consider these factors in light of the unique factual situation that the case presents. *Shimanovsky*, 181 Ill. 2d at 127. The trial court's imposition of a particular sanction will be reversed only when the record establishes a clear abuse of discretion. *Shimanovsky*, 181 Ill. 2d at 123. A reviewing court must consider the criteria upon which the trial court relied in making its determination of an appropriate sanction. *Shimanovsky*, 181 Ill. 2d at 123.

¶ 34    The record in this case illustrates some of the problems that may arise when the parties fail to avail themselves of our rules of discovery to conduct discovery in an orderly fashion and to promptly resolve disputes well in advance of an approaching trial date. Here, plaintiffs filed a motion for sanctions alleging a discovery violation and had not previously availed themselves of the alternative procedural tools that were available prior to filing their motion. Plaintiffs acknowledged that they filed the sanctions motion because in the days before trial, Cerro sought to "claw back" an inadvertently produced "5/4/87 letter" on grounds of attorney-client privilege. But plaintiffs did not identify the specific interrogatory or request for production at issue, did not indicate why the "5/4/87 letter" was relevant for the pending trial, and did not attach the letter to their motion for sanctions. Plaintiffs simply argued that the letter was not privileged because persons outside the attorney-client relationship were copied on the letter, and that Cerro's improper claim of privilege led them to suspect that Cerro had improperly claimed privilege as to thousands of ESI materials. Plaintiffs then argued that because Cerro failed to provide a privilege log for the ESI documents, Cerro should be ordered to turn over all ESI documents that were withheld.

16

¶ 35 The "5/4/87 letter" that ignited this discovery fire was written by Cerro's outside counsel to Cerro's environmental compliance manager. Neither party has included the "5/4/87 letter" in the record. The trial court did not make any findings regarding whether the document was subject to disclosure, whether Cerro's assertion of attorney-client privilege was valid, and whether Cerro violated a rule of discovery by asserting its right to "claw back" the inadvertently produced document. It is unclear how the "claw back" of this one letter, almost two years after its disclosure in a deposition, led plaintiffs' counsel to believe that Cerro had improperly withheld ESI, or how the "5/4/87 letter" represented the "tip of the iceberg."

¶ 36 The trial court ultimately concluded that Supreme Court Rule 201(n) required a party claiming a privilege to provide a privilege log, and that Cerro failed to produce a privilege log for ESI discovery, thereby violating the rule. Based on this record, there is no indication that the trial court considered the S*himanovsky* factors before deciding to impose sanctions, including the initial sanctions order requiring Cerro to disclose of all ESI documents to plaintiffs, and the subsequent order to strike Cerro's pleadings. The trial court did not conduct an evidentiary hearing to consider whether the parties had agreed that a privilege log would not be required for ESI materials; when, or if, that agreement had been dissolved; and whether Cerro's conduct constituted a willful violation of the discovery rules. The trial court did not make any findings regarding whether plaintiffs made a good-faith effort to contact opposing counsel to resolve any differences regarding the ESI discovery before filing a motion for sanctions, or whether plaintiffs' motion for sanctions was untimely. Thus, we are left without an adequate record on which to determine whether the trial court's decisions to impose sanctions, including the ultimate sanction of striking Cerro's pleadings, constituted an abuse of discretion.

¶ 37    We recognize that the trial court was attempting to resolve the claims of the parties and had made every attempt to get the parties into a courtroom for trial. This is not the first time we have seen the trial court frustrated by the actions of the parties, and we commend the trial judge for his patience and his tenacity in trying to get these matters resolved. Nevertheless, in light of the issues raised, the best course of action is to remand this matter to the trial court to conduct an evidentiary hearing and to make findings on the various matters raised by the parties, including Cerro's claim of privilege as to the "5/4/87 letter" and the parties' dispute regarding the requirement of privilege log for the ESI materials.[4]

¶ 38    Accordingly, we hereby vacate the trial court's orders denying Cerro's motion for a stay and striking Cerro's pleadings, and we remand this case with instructions. On remand, the trial court is instructed to conduct a hearing, including taking evidence if necessary, on the plaintiffs' motion for sanctions. The trial court should determine whether the "5/4/87 letter" is protected under the attorney-client privilege. The court should also consider whether the parties had an agreement that a privilege log would not be required for ESI materials, and whether that agreement was dissolved by the parties; whether plaintiffs made a good-faith effort to contact opposing counsel to resolve any differences regarding the ESI discovery before filing a motion for sanctions; whether plaintiffs' motion for sanctions was timely, considering the trial court's pretrial orders and the notice to the plaintiffs of a discovery issue; and whether Cerro's conduct

---

[4]We note, anecdotally, that plaintiffs' counsel indicated he was familiar with the protocols for searching ESI. Our rules have not yet acknowledged the challenges of preparing a privilege log that identifies every document contained within an ESI database that, potentially, contains thousands of pages of documents. The federal courts and some state courts have been analyzing the challenges presented by ESI discovery. Indeed, since 2009, the Seventh Circuit has had an ongoing Council on eDiscovery and Digital Information to "develop, implement, evaluate, and improve pretrial litigation procedures that would provide fairness and justice to all parties while seeking to reduce the cost and burden of electronic discovery." http://www.eDiscovery.com. Model orders have been developed to aid trial courts engaged in such analyses. See
http://www.cafc.uscourts.gov/sites/default/files/announcements/Ediscovery_Model_Order.pdf;
https://www.ediscoverycouncil.com/content/model-discovery-plan-and-privilege-order.

constituted a willful violation of the discovery rules requiring the imposition of sanctions. If the court concludes that a sanction is appropriate, then the court must consider the pertinent factors in fashioning a sanction. The trial court, in its discretion, may consider other matters regarding these issues, and our ruling should not be read to limit the trial court's discretion under these unique circumstances. Indeed, should the plaintiffs withdraw their motion, the court maintains its discretion on how to proceed with the resolution of the claims it had previously scheduled for trial.

¶ 39                                        CONCLUSION

¶ 40    Accordingly, the circuit court's court order denying Cerro's motion to stay the proceedings, the court's initial sanction order requiring Cerro to produce all ESI material directly to plaintiffs, and the order striking Cerro's pleadings are hereby vacated; the stay order is lifted; and the cause is remanded to the circuit court with instructions and for further proceedings consistent with this decision. The court directs the clerk to issue the mandate immediately.

¶ 41    Orders vacated, stay lifted, remanded with instructions.

2019 IL App (5th) 190285
NOS. 5-19-0285, 5-19-0286, 5-19-0287, 5-19-0288 (cons.)
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MARTHA CUSTER, *et al.*, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 14-L-425; 09-L-657; |
| | ) | 09-L-527; 09-L-295 |
| | ) | |
| CERRO FLOW PRODUCTS, INC., *et al.*, | ) | Honorable |
| | ) | Andrew J. Gleeson, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

**Opinion Filed:** September 6, 2019

_____

**Justices:** Honorable Judy L. Cates, J.

Honorable Melissa A. Chapman, J., and
Honorable James R. Moore, J.
Concur

_____

**Attorneys for Appellant**
Mark A. Kircher, Quarles & Brady LLP, 411 East Wisconsin Avenue, Suite 2350, Milwaukee WI 53202-4426; Edward K. Poor, IV, Anthony P. Steinike, Quarles & Brady LLP, 300 N. LaSalle Street, Suite 4000, Chicago, IL 60654; Thomas R. Ysursa, Becker, Hoerner & Ysursa, P.C., 5111 W. Main Street, Belleville, IL 62226

_____

**Attorneys for Appellee**
Christopher F. Cueto, Law Office of Christopher Cueto, Ltd., 7110 West Main Street, Belleville, IL 62223; Lloyd A. Cueto 120 West Main Street, Suite 211, Belleville, IL 62220; Thomas R. Frazer, II, Patrick D. McMurtray, Frazer Law LLC, 1 Burton Hills Blvd., Suite 215, Nashville, TN 37215; Clyde L. Kuehn, Mathis, Marifian & Richter, 23 Public Square, Suite 300, Belleville, IL 62220; Kevin B. McKie, Environmental Litigation Group, PC, 2160 Highland Avenue South, Birmingham, AL 35205; Paul G. Schoen, Schoen Law Firm, P.C., 120 W. Main Street, Suite 212, Belleville, IL 62220; Troy E. Walton, Walton Telken, LLC, 241 North Main Street, Edwardsville, IL 62025; Bruce N. Cook, Cook, Bartholomew, Shevlin & Cook, LLP, 12 West Lincoln Street, Belleville, IL 62220; Charles R. Hobbs, II, Lathrop & Gage, LLP, Pierre Laclede Center, 7701 Forsyth Blvd., Suite 500, Clayton, MO 63105; Robert G. Lathram, 203 W. Main Street, Collinsville, IL 62234; Joseph G. Nassif, Nassif Law Firm, 10701 Kingsbridge Estates Drive, Creve Coeur, MO 63141; Robert J. Sprague, Sprague & Urban, 26 East Washington Street, Belleville, IL 62220, Bernard J. Ysursa, Ysursa Law Offices, LLC, 12 West Lincoln Street, Belleville, IL 62220-2085

_____