2020 IL App (2d) 200601-U
No. 2-20-0601
Order filed November 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BEVERLY GLEN HOMEOWNERS' ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-MR-1123 |
| TERESA JAGIELLO and KATARZYNA JAGIELLO, | ) ) ) | |
| Defendants-Appellees. | ) ) | Honorable Paul M. Fullerton, |
| (Jerzy Jagiello, Defendant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in: (1) granting defendants' motion to enforce the parties' settlement agreement and did not interpret any statutory provisions in arriving at its determination; and (2) finding plaintiff in contempt and imposing a monetary fine. Affirmed.

¶ 2   In this interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) (interlocutory appeal as of right from an injunction), plaintiff, Beverly Glen Homeowners' Association, had sued defendants, Teresa Jagiello, Katarzyna Jagiello, and Jerzy Jagiello (Teresa

and Katarzyna were unit owners of a townhome in the development), seeking a declaratory judgment and injunctive relief for claims concerning plaintiff's alleged rights to common areas at the property. As relevant to this appeal, defendants Teresa and Katarzyna counterclaimed, alleging violations of the Common Interest Community Association Act (CICA) (765 ILCS 160/1-1 *et seq.* (West 2018)), specifically, that plaintiff allegedly refused to comply with their document-inspection request. The parties entered into a settlement agreement concerning the CICA counterclaims. However, in response to defendants' allegations that plaintiff failed to comply with the settlement agreement, the trial court, on April 14, 2020, granted defendants' motion to enforce the settlement agreement, ordering plaintiff to produce all documents by May 29, 2020. Defendants continued to maintain that plaintiff had not produced the requested documents and moved for a rule to show cause against plaintiff. On June 9, 2020, the trial court issued a rule to show cause and, on July 17, 2020, the trial court found plaintiff in indirect civil contempt of court and allowed it to purge the contempt by complying with its April 14, 2020, order and producing all documents on August 17, 2020, which it did not do.

¶ 3 Subsequently, defendants issued subpoenas to Hunzinger & Co., plaintiff's accountant, and the trial court denied plaintiff's motions to quash the subpoenas and ordered Hunzinger to produce all requested documents. The court also denied plaintiff's motion to vacate the contempt finding, imposed a $100-per-week fine until the contempt was purged, ordered plaintiff to produce the original documents, and denied plaintiff's motion to stay the proceedings.

¶ 4 Plaintiff appeals, arguing that: (1) the trial court erred in granting defendants' motion to enforce the settlement agreement based on its erroneous construction of sections 1-30(i)(1)(i), (1)(ii), and (1)(iii) of CICA; (2) the court erred in denying plaintiff's cross-motion to enforce the settlement agreement; (3) the court erred in denying plaintiff's motion to quash defendants' second

subpoena to Hunzinger; and (4) the contempt finding and fine should be reversed and vacated. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                    A.  Controversy

¶ 7      In August 2018 and in a subsequent amended complaint, the Association, a not-for-profit corporation, sued defendants, alleging they were record unit owners of 6514 Stair Street, Downers Grove, 60516, and members of plaintiff, seeking a declaratory judgment and injunctive relief with respect to disputes over plaintiff's alleged rights concerning common areas and limited common areas at the property.  Plaintiff alleged that it, the Village of Downers Grove, and authorized representatives, agents, and contractors have perpetual easement rights of ingress and egress to the common and limited areas of the property, including the basement of defendants' unit, where the main shared water lines and water meter are housed, and the front and back yards, for the purpose of routine inspection, examination, maintenance, and repairs.  Despite reasonable advance notice, defendants refused them access.

¶ 8      In November 2017, plaintiff alleged, defendants complained of a water-line leak.  The Village received notice and informed defendants that they should notify plaintiff.  Defendants did not notify plaintiff, who later learned of the alleged leak from the Village.  Plaintiff sought access to defendants' unit, but defendants denied it access.  Plaintiff further alleged that it informed defendants that they were not authorized to unilaterally commence any construction that might affect the main water line or meter.  However, between December 2017 and January 2018, defendants commenced such work.  Plaintiff sought a declaratory judgment that it and the Village and their representatives and contractors have easement rights to the common areas and limited common areas (which include the common water lines and common water meters) and an

injunction prohibiting defendants from making any changes to the common areas, including the front and back yards of the unit, without prior express written permission from plaintiff. Plaintiff also alleged that an ash tree in defendants' front yard is located within the common area and is its responsibility. However, defendants claimed to own the tree, which, according the plaintiff is infected with ash borer and is a safety hazard. Plaintiff sought to remove the tree.

¶ 9 In March 2019, Teresa and Katarzyna, asserting that they were the legal owners of 6514 Stair Street, filed a counterclaim against plaintiff. They alleged that they sought documents from plaintiff pursuant to CICA, but that plaintiff requested documentation of current ownership of the subject unit. Defendants further alleged that, after providing such documentation, plaintiff never produced or made available the requested documents for inspection. They referred to another case, wherein the court had ruled against plaintiff for failing to properly respond to a CICA request. In several counts, defendants asserted claims for CICA violations and breaches of fiduciary duty by plaintiff's president, treasurer, and secretary (counts I through IV); property damage and constructive fraud against plaintiff for allegedly failing to address flooding in defendants' unit (count V); violations of plaintiff's declaration as to the removal of trees, where plaintiff allegedly did not replant removed trees, resulting in squirrels seeking shelter in and damaging vehicles (count VI); and violation of the declaration as to unauthorized parking restrictions, where plaintiff allegedly violated the declaration (and diminished the value of the unit) by restricting the number of parking spaces for each unit and making parking permits non-transferable, where such right is appurtenant to and passes with title to each lot (count VII).

¶ 10 Teresa and Katarzyna had made their document request on August 24, 2018. They sought: (1) plaintiff's annual reports from January 1, 2017, to the present (pursuant to section 1-30(i)(1)(i) of CICA); (2) an itemized chronological list of expenditures affecting the common areas, including

copies of contracts, leases, or other agreements entered into by the board from January 1, 2017, to the present (pursuant to section 1-30(i)(1)(ii)); and (3) minutes of all board meetings from January 1, 2017, to the present (pursuant to section 1-30(i)(1)(iii)).

¶ 11                              B. Settlement Agreement

¶ 12      On December 6, 2019, the parties entered into a settlement agreement concerning the CICA claims (counts I through IV) in defendants' counterclaim. They agreed that defendants would dismiss counts I through IV of their counterclaim with prejudice. Also, plaintiff agreed to: "produce documents identified in the August 24, 2018[,] Letter for all dates between January 1, 2017[,] and December 6, 2019[.]" The agreement also specified that the record request and the August 24, 2018, letter were incorporated into the agreement and that the document inspection would take place on December 19, 2019, at 1 p.m. at or near the offices of Kenneth DucDuong (plaintiff's attorney). The transcript of the hearing on the agreement was incorporated into the settlement agreement.

¶ 13      On December 19, 2019, plaintiff produced several documents (a ledger, invoices, contracts, leases, annual reports, meeting minutes, and other agreements), and defendant Teresa and counsel inspected the records for, according to plaintiff, 2½ hours.

¶ 14      On January 6, 2020, defendants moved to enforce the December 2019 settlement agreement, arguing that the agreed-to inspection location had been changed, plaintiff refused to turn over documents for inspection unless defendants refrained from copying or photographing the documents, and that not all of the agreed-to documents had been produced for inspection.

¶ 15      On February 20, 2020, plaintiff filed a cross-motion to enforce the settlement agreement, seeking an order that defendants pay two charges for their records request: (1) a $75 fee for the request, which was specified in the record-request form defendants executed; and (2) $150 for

expenses plaintiff alleged it incurred to Hunzinger related to the request and which it argued were statutorily allowed ((765 ILCS 160/1-30(i)(3) (West 2018) ("A reasonable fee may be charged by the board for the cost of retrieving and copying records properly requested.")) and contractually agreed-to (the request form noted: "Copying/Other Charges: TBD").

¶ 16    On April 8, 2020, plaintiff moved for summary judgment on counts I through III of defendants' counterclaim. It raised for the first time that plaintiff is governed by the General Not For Profit Corporation Act of 1986 (Non-profit Act) (805 ILCS 105/101.01 *et seq.* (West 2018)), not CICA. Plaintiff also argued that defendants failed to complete and return a record-request form, did not have a proper purpose, and already possessed some of the requested documents.

¶ 17    On April 14, 2020, the trial court granted defendant's motion to enforce the settlement agreement, ordering plaintiff to produce all documents identified in the August 24, 2018, letter within seven days of the next status date (*i.e.*, by May 29, 2020). It also specified that the documents contain no redactions except for personal information and that defendants have the ability to identify which documents they sought to have copied, with copies provided to them upon their payment of reasonable copying costs. The court also noted that it would entertain a fee petition from defendants, supported by affidavit, for reasonable costs and fees incurred and related to bringing their motion. In the same order, the court lifted a stay on discovery and noted the "extreme animosity" between the parties and the "extensive litigation" that "makes absolutely no economic sense," where the "dislike" between the attorneys was such that "resolution appears impossible."

¶ 18    On June 1, 2020, defendants moved for a rule to show cause against plaintiff, arguing that plaintiff had failed to produce the agreed-to documents for inspection. On June 9, 2020, the trial court issued a rule to show cause and gave plaintiff 14 days to respond why it should not be held

in contempt of court for failing to comply with the court's December 6, 2019, and April 14, 2020, orders. On June 12, 2020, plaintiff, in turn, moved for entry of a friendly indirect civil contempt against defendants for purposes of facilitating appellate review of the trial court's April 14, 2020, order (and a nominal fine to be held in abeyance pending appeal under Rule 304(b)(5)). On July 17, 2020, the trial court found plaintiff in indirect civil contempt of court and allowed it to purge the contempt by complying with paragraph two of the court's April 14, 2020, order and produce all documents on August 17, 2020. The court denied plaintiff's motion for a finding of friendly indirect civil contempt and its cross-motion to enforce the settlement agreement. It also denied plaintiff's motion to reconsider the portion of its April 14 order that granted defendants' motion to enforce the settlement. Finally, the trial court denied plaintiff's motion for leave to file under seal or to conduct a hearing to examine documents.

¶ 19　　On July 27, 2020, defendants issued a subpoena for documents to Hunzinger. The subpoena was quashed on August 12, 2020.

¶ 20　　On July 30, 2020, plaintiff moved to vacate and stay the contempt finding (and filed records of annual reports, meeting minutes, and expenses) and, on September 1, 2020, moved to stay the proceedings. At an August 14, 2020 hearing, DucDuong represented to the court that no documents would be produced by the specified deadline.

¶ 21　　On August 14, 2020, plaintiff filed its (first) notice of interlocutory appeal with this court.

¶ 22　　On August 17, 2020, plaintiff subpoenaed Hunzinger a second time, seeking financial records related to the litigation.

¶ 23　　On August 31, 2020, the trial court denied plaintiff's motion to vacate the contempt finding and stay the proceedings, noting that a notice of appeal had been filed on August 14.

¶ 24    Plaintiff, on September 1, 2020, moved to quash a subpoena issued to Hunzinger, arguing that it was not on a required form, did not contain part of a warning, was not served by a sheriff, and the requested documents were not relevant to the facts at issue. Plaintiff also moved to stay the proceedings, arguing that, given the appeal, it was prudent to maintain the status quo. In this court, it moved to voluntarily dismiss its appeal. On September 4, 2020, this court dismissed the appeal. On September 22, 2020, plaintiff moved to dismiss defendants' motion for leave to file a proposed shareholder-derivative suit.

¶ 25    On October 15, 2020, the trial court denied plaintiff's motion to stay the proceedings; denied plaintiff's motion to vacate the contempt finding (and further ordered that plaintiff was fined $100 per week until the contempt is purged; the court noted that it had ordered plaintiff to produce the original documents); denied plaintiff's motion to quash the second subpoena to Hunzinger (and ordered Hunzinger to produce all requested documents within 14 days); denied defendants' motion for leave to file an amended counterclaim; and denied defendants' motion for leave to file a proposed derivative suit against plaintiff's directors.

¶ 26    On October 16, 2020, plaintiff filed its (second) notice of interlocutory appeal to this court.

¶ 27                                    II. ANALYSIS

¶ 28    Initially, we note that plaintiff's briefs in this appeal are disorganized and, at times, somewhat incomprehensible. See *Twardowski v. Holiday Hospital Franchising, Inc.*, 321 Ill. App. 3d 509, 511, (2001) (this court is "entitled to have briefs submitted that present an organized and cohesive legal argument in accordance with the Supreme Court Rules."). Our review is further hampered by both parties' inadequate statements of fact, which omit relevant evidence, furnish erroneous cites to the record, and exaggerate or even misrepresent the facts in evidence. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (appellate briefs shall include "Statement of Facts, which

shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal.") However, while the insufficiency of the parties' briefs hinders our review, we are able to ascertain the merits of the case from the record on appeal and we, therefore, choose to reach them. See *Twardowski*, 321 Ill. App. 3d at 511.

¶ 29    Plaintiff argues that: (1) the trial court erred in granting defendants' motion to enforce the settlement agreement based on its erroneous construction of sections 1-30(i)(1)(i), (1)(ii), and (1)(iii) of CICA[1]; (2) the court erred in denying plaintiff's cross-motion to enforce the settlement agreement; (3) the court erred in denying plaintiff's motion to quash defendant's subpoena to Hunzinger; and (4) the contempt finding and fine should be reversed and vacated.

---

[1] Section 1-30(i)(1)(i) of CICA provides that a board must maintain certain records and make them available for examination and copying by any member or unit owner, including: "Copies of the recorded declaration, other community instruments, other duly recorded covenants and bylaws and any amendments, articles of incorporation, articles of organization, annual reports, and any rules and regulations adopted by the board[.]" 765 ILCS 160/1-30(i)(1)(i) (West 2018). A board is also required to maintain detailed records of receipts and expenditures (see 765 ILCS 160/1-30(i)(1)(ii) (West 2018) ("Detailed and accurate records in chronological order of the receipts and expenditures affecting the common areas, specifying and itemizing the maintenance and repair expenses of the common areas and any other expenses incurred, and copies of all contracts, leases, or other agreements entered into by the board shall be maintained.")) and meeting minutes (see 765 ILCS 160/1-30(i)(1)(iii) (West 2018) ("The minutes of all meetings of the board which shall be maintained for not less than 7 years.")).

¶ 30                                  A. Jurisdiction

¶ 31    Before reaching the merits, we address our jurisdiction over aspects of this appeal. This case involves, in part, the appeal from the denial of plaintiff's motion to stay the trial court proceedings (as it related to, among others, the trial court's order granting defendant's motion to enforce the settlement agreement and granting defendant's rule to show cause). Supreme Court Rule 307(a)(1) provides that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010). A stay is considered injunctive in nature. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Thus, Rule 307(a) permits the interlocutory appeal of a stay of trial court proceedings. *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 33.

¶ 32    The trial court's July 17, 2020, contempt finding and October 15, 2020, imposition of a $100-per-week penalty arose from the court's granting, on April 14, 2020, of defendants' motion to enforce the parties' settlement agreement. We have jurisdiction to consider the issues related to these rulings. See *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008) (contempt judgments that impose a penalty are final, appealable orders); see also Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016, 2006) (providing that a Rule 304(a) finding is not required for an appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty.").

¶ 33    The parties disagree whether we have jurisdiction over the issues concerning the trial court's denial of plaintiff's motion to quash the Hunzinger subpoena and the denial of plaintiff's cross-motion to enforce the settlement agreement. Defendants argue that the two issues are not properly before this court because: (1) plaintiffs did not obtain an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding; and (2) they are not appealable under Rule 307(a)(1), because it applies only to injunctive orders. Plaintiff responds that this court has jurisdiction pursuant to

Rule 307(a)(1) and, "in the interest of judicial economy," should review the trial court's ruling on the cross-motion and "related orders," because they arose from the same settlement agreement.

¶ 34 We conclude that we do not have jurisdiction to consider the trial court's denial of plaintiff's motion to quash the Hunzinger subpoena. A discovery order is not a final order and is not ordinarily appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, a party challenging a discovery order may test the propriety of the order through contempt proceedings. *Id.* "When [a party] appeals contempt sanctions imposed for violating, or threatening to violate, a pretrial discovery order, the discovery order is subject to review." *Id.* Here, plaintiff did not pursue this avenue to challenge the court's order.

¶ 35 Plaintiff argues that the court's ruling had injunctive effect and, thus, is reviewable under Rule 307(a)(1). "[P]urely ministerial or administrative discovery orders which regulate only procedural details of the litigation do not come within the realm of injunctive relief" under Rule 307(a)(1). *Custer v. Cerro Flow Products, Inc.*, 2019 IL App (5th) 190285, ¶ 23. However, where "the trial court's order denying a stay of the proceedings [is] not purely ministerial and effectively enjoin[s] [a party] from asserting its right to claim the attorney-client privilege and from protecting the legal privileges of third parties," the order is reviewable under Rule 307(a)(1). *Id.* We disagree that the court's actions regarding the Hunzinger subpoena had injunctive effect. Plaintiff maintained below that the documents defendants sought had already been produced. The subpoena to plaintiff's accountant did not enjoin plaintiff from asserting any claims or substantive rights in the litigation. Accordingly, we lack jurisdiction to consider the subpoena issue.

¶ 36 Turning to plaintiff's cross-motion to enforce the settlement agreement, we also conclude that we lack jurisdiction to review the court's denial of this motion. In the motion, plaintiff sought an order that defendants pay two charges for their records request: (1) a $75 fee for the request,

which was specified in the record-request form defendants executed; and (2) $150 for expenses plaintiff alleged it incurred to Hunzinger related to the request and which it argued were statutorily allowed (765 ILCS 160/1-30(i)(3) (West 2018) ("A reasonable fee may be charged by the board for the cost of retrieving and copying records properly requested.")) and contractually agreed-to (the request form noted: "Copying/Other Charges: TBD"). The trial court denied the motion on July 17, 2020. The order is interlocutory, plaintiff did not obtain a Rule 304(a) finding from the ruling, and it cites no authority for the proposition that we have jurisdiction to consider this aspect of the appeal. Plaintiff merely asserts that, "in the interest of judicial economy," we review this ruling. In the absence of relevant authority, we decline its request.

¶ 37                                                B. CICA arguments

¶ 38     Turning to the merits, plaintiff's first two arguments concern CICA. It contends that the trial court, in its April 14, 2020, order granting defendants' motion to enforce the settlement agreement, erroneously expanded the scope of the requirements under sections 1-30(i)(1) when it determined that production of a ledger was inadequate and instead ordered plaintiff to produce documents of its receipts and expenditures. The expansive interpretation, plaintiff argues, is untenable, because it requires it to produce every document it possesses, and absurd, because it is overly costly.

¶ 39     Plaintiff's second CICA argument is that the trial court erred in ordering plaintiff to produce original "copies of contracts, leases, or other agreements." It also asserts that the court made no factual findings, held no evidentiary hearing, and received no evidence before granting the motion. The court also, according the plaintiff, misunderstood the statute, and defendants repudiated the settlement. Finally, plaintiff argues that the court's order that documents contain

no redactions except for certain personal information should be reversed, because it did produce originals and CICA does not require originals.

¶ 40    Defendants respond that: (1) plaintiff never produced any original annual reports or meeting minutes; (2) statutory interpretation is not at issue; rather, plaintiff's breach of the settlement agreement is at issue; (3) nevertheless, as to the CICA issue, the statute requires plaintiff to maintain and produce *original* financial documents and meeting minutes, including itemized maintenance and repair expenses, not summaries or ledgers, which plaintiff provided; and (4) as to the maintenance-and-repair-expenses CICA provision, plaintiff did not produce all required documents, including originals, and redactions can be made on originals that are in fact computer printouts.  Defendants contend that plaintiff produced no contracts, leases, or other agreements and that no original or non-redacted invoices were produced.  They also contend that half of the 24 produced invoices were redacted or otherwise altered.  Finally, defendants point to portions of the transcript where plaintiff's insurer's appointed counsel, Catherine Weiler, expressed frustration with plaintiff's counsel's lack of cooperation and failure to produce all documents.

¶ 41    We reject plaintiff's assertion that the trial court erred in construing the statute.  The issue on appeal concerns the settlement agreement.  Nowhere in the court's orders did the court interpret CICA.  Indeed, in its April 8, 2020, summary-judgment motion and in portions of its briefs in this appeal, plaintiff maintains that it was governed by the Non-profit Act, not CICA, yet proceeded throughout this contentious litigation to raise CICA-based arguments.

¶ 42    Plaintiff attempts to use the statute to challenge the propriety of the trial court's April 14, 2020, order granting defendants' motion to enforce the settlement agreement, which required plaintiff to produce all documents in its possession.  In that order, the court dismissed defendants' counterclaims (counts I through IV), with prejudice, and ordered that plaintiff "SHALL produce

ALL documents identified in the August 24, 2018[,] letter for all dates between January 1, 2017[,] and December 6, 2019." It further specified that the documents "shall contain no redactions except for personal identification information, such as social security numbers, full bank account numbers, personal phone numbers, etc." It repeated, "The production shall be for inspection of ALL original documents they desire to have copied and said copies shall be provided to the Defendants upon Defendants['] payment of reasonably copying costs."

¶ 43 The settlement agreement specified that plaintiff "has agreed to produce documents identified in the August 24, 2018[,] Letter for all dates between January 1, 2017[,] and December 6, 2019[.]" That letter requested: (1) annual reports beginning January 1, 2017 (per section 1-30(i)(1)(i)); (2) chronological producing of "expenditures affecting the common areas, specifying and itemizing the maintenance and repair expenses of the common areas and any other expenses incurred, and copies of *all* contracts, leases, or other agreements entered into by the board from January 1, 2017[,] to [the] present" (emphasis added); and (3) minutes of all board meetings from January 1, 2017, to the present. Again, the parties *agreed* to this language. The trial court's April 14, 2020, order granting enforcement of the agreement and ordering that plaintiff produce "ALL original documents" listed in the August 24, 2018, letter (which was incorporated into the settlement agreement) mirrors the settlement agreement's language. The trial court did not err in granting defendants' motion to enforce the settlement agreement. Plaintiff complains that CICA does not require that the underlying documents be produced and that a ledger it allegedly produced satisfied the statute. Again, this argument fails because the issue on appeal concerns the settlement agreement, not CICA, which the trial court did not interpret.

¶ 44 Leading up to its ruling on defendants' motion to enforce the settlement agreement, the trial court presided over several hearings where the parties disputed whether plaintiff met its

obligations under the settlement agreement. In this appeal, plaintiff has failed to convince us that the trial court's ruling was erroneous. As noted, there was evidence before the court that plaintiff did not produce the required documents. We also note that plaintiff concedes that some of the documents it did produce consisted of checks placed on top of and partially blocking the related statement. However, it argues that this does not make these documents any less original or complete. We disagree. Plaintiff also concedes that it did not produce the corporate reports (due to "[u]nkown computer efile errors"; it does not explain why it did not attempt again to retrieve the information) and contends that they are a matter of public record and that defendants can obtain them on their own from the Secretary of State's website. This argument is also unavailing because the parties' settlement agreement does not place the burden on defendants to obtain public records.

¶ 45                                          C. Contempt

¶ 46     Plaintiff's final argument is that, assuming we agree that the trial court's rulings were erroneous, we reverse and vacate the trial court's contempt order and monetary fine. Given that we have rejected its argument that the trial court erred in granting defendants' motion to enforce the settlement agreement, we decline its request.

¶ 47                                       III. CONCLUSION

¶ 48     For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 49     Affirmed.