**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240602-U

Order filed April 6, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| BEVERLY GLEN HOMEOWNERS' ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellant | ) ) | |
| v. | ) ) | Appeal No. 3-24-0602 Circuit No. 18-MR-1123 |
| JERZY JAGIELLO, TERESA JAGIELLO, and KATARZYNA JAGIELLO, | ) ) ) | Honorable Anne Therieau Hayes |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Brennan and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: The trial court did not err in imposing a $10,100 contempt fine, but it erred in denying posttrial attorney fees without explanation. Affirmed in part, reversed in part, and remanded with directions.

¶ 2      Plaintiff, Beverly Glen Homeowners' Association, appeals two orders the trial court entered after approximately six years of litigation. The first order reduced the attorney fees plaintiff sought in connection with the litigation. The second order fined plaintiff $10,100 pursuant to a

civil contempt finding previously affirmed on appeal. *Beverly Glen Homeowners' Association v. Jagiello*, 2020 IL App (2d) 200601-U (*Jagiello I*).

¶ 3        For the following reasons, we affirm in part and reverse in part the trial court's judgment. Specifically, we agree with plaintiff that the trial court abused its discretion when it failed to explain why it disallowed attorney fees related to posttrial litigation. We remand for the court to award a reasonable fee for the posttrial litigation and, per plaintiff's request, to award a reasonable fee for this appeal. We otherwise affirm the court's judgment.

¶ 4                                   I. BACKGROUND

¶ 5        Plaintiff is an association of homeowners who own property in a townhome development in the Village of Downers Grove (Village). It is controlled by a board of directors. At the time this litigation commenced, Carl Srachta served as the board's president, Kathleen Perry served as its treasurer, and Ina Aponte served as its secretary. Defendants, Jerzy Jagiello, Teresa Jagiello, and Katarzyna Jagiello, co-own a lot and unit in the development and are thus members of plaintiff.

¶ 6        The parties have been at odds for years, spawning multiple lawsuits and appeals. See *Jagiello v. Beverly Glen Homeowners' Association*, 2019 IL App (2d) 180541-U; *Jagiello v. Beverly Glen Homeowners' Association*, 2019 IL App (2d) 180621-U; *Jagiello v. Beverly Glen Homeowners' Association*, 2021 IL App (2d) 200192-U; *Beverly Glen Homeowners' Association v. Jagiello*, 2-20-0452 (Sept. 1, 2020); and *Jagiello v. Srachta*, No. 3-22-0073 (Mar. 29, 2022).

¶ 7        In this case, the parties' and their attorneys' readily apparent animosities produced a protracted battle over the production of plaintiff's records, plaintiff's adoption of parking restrictions, plaintiff's access to common areas on or near defendants' lot, and plaintiff's authorization to remove a diseased ash tree near the front of defendants' lot. The parties filed more than 120 motions; some of the motions were amended and nearly all were fully briefed. The record

2

contains nearly 9,000 pages, which notably consists almost entirely of the common-law record. Indeed, even though the parties and their attorneys were in court on numerous occasions, many relevant hearings, including the 11-day bench trial, are absent from the report of proceedings.

¶ 8                                 A. Defendants' Lot and Unit

¶ 9        Defendants' unit is at the end of a four-unit building. According to plaintiff, the four units share common water lines and a common water meter. Before this litigation, a mature ash tree was located near the front of defendants' lot. The tree was infested with ash borer and, according to plaintiff, beyond saving.

¶ 10                                 B. The Declaration

¶ 11       A declaration sets forth the rights and responsibilities of plaintiff and its members (Declaration). Plaintiff must maintain the common areas in good repair. Plaintiff may grant and reserve easements over common areas for the purpose of maintaining and inspecting water lines. Plaintiff may "plant, reconstruct or replant, repair and maintain *** trees, shrubs, [and] landscaping" in the common areas and in "all areas to which easement rights have been granted to [it]." Under the Declaration, the "common areas" are "those areas of land *** including, but not limited to parks, playgrounds, swimming pools, golf courses, commons, Non-dedicated streets, footways, including buildings, structures, non-dedicated sewer and water lines and other personal properties incident thereto and any other properties owned and maintained by the Association."

¶ 12       The Declaration also gives plaintiff the "right to enforce [the Declaration] by any proceeding at law or in equity, against any person or persons violating or attempting to violate [the Declaration], to restrain violation, to require specific performance and/or to recover damages." Further, the Declaration permits plaintiff to recover its "expense of enforcement," which is "chargeable to the Owner of the Lot violating [the Declaration]."

3

¶ 13                               C. Plaintiff's Complaint

¶ 14          In August 2018, plaintiff sued Jerzy. The court determined Teresa and Katarzyna—as co-owners of the lot and unit at issue—were necessary parties. Thus, on February 4, 2019, plaintiff amended the complaint to add Teresa and Katarzyna as defendants. Plaintiff alleged, generally, that defendants had barred access to common areas both inside and outside their unit and had prevented plaintiff from removing the diseased ash tree. Plaintiff brought three counts, each seeking declaratory and injunctive relief as well as attorney fees and costs.

¶ 15          Count I sought a declaration that plaintiff and the Village had "a perpetual easement right of egress and ingress to the common areas and limited common areas[1], including the front and back yards of [defendants'] Unit." Count II sought declarations that the shared water line and water meter in defendants' unit were common areas and that plaintiff had "an easement right of ingress and egress" to the water line and meter "for the purpose of investigation, *** and making repairs, as appropriate." Counts I and II sought the same injunctive relief—an order "prohibiting Defendants [from] making any changes that would affect the common or limited common areas without prior express or written permission or authorization from [plaintiff]."

¶ 16          Count III sought a declaration that the diseased ash tree was within a common area and was not owned by defendants. Plaintiff also sought injunctive relief allowing it to remove the tree.

¶ 17                               D. Defendants' Counterclaim

¶ 18          Defendants answered plaintiff's amended complaint. Teresa and Katarzyna, but not Jerzy, counterclaimed. (Though Jerzy was not a counterplaintiff, we will refer to the counterplaintiffs as "defendants" for simplicity.) The counterclaim consisted of seven counts.

---

[1]The Declaration does not define "limited common areas."

4

¶ 19       Count I alleged plaintiff violated the Common Interest Community Association Act (Act) (765 ILCS 160/1-1 *et seq.* (West 2018)) by failing to produce certain documents they had requested. According to defendants, in August 2018, they sent a letter to plaintiff requesting annual reports, board meeting minutes, records relating to the expenditures affecting the common areas, and all contracts, leases, or other agreements executed by the board. Defendants asserted plaintiff did not produce those documents or make them available for inspection as required by the Act. Defendants sought an order requiring plaintiff to produce the requested documents and to pay attorney fees and costs as authorized by the Act.

¶ 20       Counts II, III, and IV alleged plaintiff's officers, Srachta (count II), Perry (count III), and Aponte (count IV), breached their fiduciary duties by subjecting plaintiff to liability under the Act. Defendants sought damages grounded in the "litigation costs incurred by [plaintiff] and [defendants] in enforcing the *** Act."

¶ 21       Count V alleged plaintiff breached its fiduciary duties when it failed to immediately investigate and remediate the cause of water infiltrating their unit, which was later determined to be "poor foundation drainage and significant foundation voids." Defendants sought damages related to the water infiltration.

¶ 22       Count VI alleged plaintiff violated the Declaration when it removed trees around the development, including two near their unit, without replacing them. Defendant sought an order declaring that plaintiff "must replant trees removed" and "must not remove trees arbitrarily."

¶ 23       Count VII alleged plaintiff's board enacted parking restrictions in the common areas without proper authority. Defendants sought an order declaring plaintiff had no authority under the Declaration to restrict parking in common areas and voiding any such restrictions.

¶ 24                          E. Pretrial Resolution of Several Claims

¶ 25 Before trial, the court entered judgment or partial judgment on several of the parties' claims.

¶ 26                                    1. *Counts I and II of Plaintiff's Complaint*

¶ 27 In April 2020, the court entered partial summary judgment in plaintiff's favor on counts I and II of the amended complaint. Specifically, the court granted plaintiff's motion insofar as plaintiff requested a declaration that it had a perpetual right of access to the common areas, including water lines, sewer, and water meters inside defendants' unit, for purposes of maintenance, repair, inspection, and investigation. The court denied the motion insofar as plaintiff sought injunctive relief and a finding that defendants violated the Declaration.

¶ 28                                    2. *Count III of Plaintiff's Complaint*

¶ 29 In October 2018, before Jerzy had answered the complaint, plaintiff moved for an order permitting it to remove the diseased ash tree that was the subject of count III. The motion was fully briefed before plaintiff amended its complaint. In April 2020, the court granted plaintiff's motion, finding plaintiff had presented sufficient evidence that the tree was located in a common area and was infested. Plaintiff had the tree removed sometime before August 2020.

¶ 30 Plaintiff later moved for summary judgment on count III, seeking an order allowing it to "charge back the contractor's actual expense for the removal of the tree to [defendants]" and granting it leave to file a petition for attorney fees and costs "at a later time." The court denied plaintiff's motion, finding factual issues as to "damages." (Count III of plaintiff's amended complaint did not request damages; it sought only attorney fees and costs.)

¶ 31                                    3. *Counts I through IV of Defendants' Counterclaim*

¶ 32 On December 6, 2019, the parties settled counts I through IV of defendants' counterclaim (records settlement). Defendants agreed to dismiss counts I through IV with prejudice. In

6

exchange, Aponte agreed to pay defendants $1,500 to resolve count IV and plaintiff agreed to produce the records requested in defendants' August 2018 letter for all dates between January 1, 2017, and December 6, 2019. The parties agreed that defendants would be allowed to inspect those record in person on December 19, 2019. The court entered a written order memorializing the terms of the records settlement, which incorporated the August 2018 letter, the Association's response to it, and the transcript of the December 6, 2019, proceedings (which does not appear in the record).

¶ 33                          4. *Count V of Defendants' Counterclaim*

¶ 34        In June 2019, the trial court dismissed count V of the counterclaim (water infiltration). It determined the claim was barred by *res judicata* because it had been resolved in a different proceeding (Du Page County Case No. 17-SR-1166; Appeal No. 2-18-0621) and by the Declaration's terms.

¶ 35                    F. Litigation to Enforce the Records Settlement

¶ 36        In January 2020, defendants moved to enforce the records settlement. In April 2020, the court granted defendants' motion (April 2020 order). The court ordered plaintiff to produce all documents identified in the August 2018 letter "for all dates between January 1, 2017 and December 6, 2019." The court ordered the documents to contain "no redactions except for personal identification information, such as Social Security numbers, full bank account numbers, personal phone numbers, etc." The court set a May 29, 2020, deadline for compliance. It also granted defendants leave to petition for reasonable costs and attorney fees related to enforcing the records settlement. The court later awarded defendants $5,643.75 in attorney fees pursuant to this order.

¶ 37        In July 2020, the court found plaintiff in indirect civil contempt based on its failure to comply with the records settlement and the April 2020 order. To purge, plaintiff was required to

7

comply with the April 2020 order and to produce all documents in its possession on August 17, 2020, at plaintiff's clubhouse.

¶ 38    Later that month, plaintiff moved to vacate the contempt finding and to stay the contempt proceedings. Plaintiff attached to its motion an affidavit of completeness from Srachta, which attached numerous records. Srachta attested the attached records contained all the responsive records plaintiff had in its possession. Among the records were 22 clubhouse rental agreements, from which the renters' names, addresses, and signatures were redacted. Plaintiff refused to hold the in-person inspection, instead standing on Srachta's affidavit.

¶ 39    On October 15, 2020, the court declined to vacate the contempt order and to stay the proceedings. The court imposed a $100-per-week fine until the contempt was purged.

¶ 40    Plaintiff appealed.[2] On November 2, 2020, the appellate court stayed the $100-per-week contempt fine during the appellate proceedings. On November 30, 2020, this court affirmed the contempt order. *Jagiello I*, 2020 IL App (2d) 200601-U, ¶ 49. The appellate court rejected plaintiff's challenges to the April 2020 order enforcing the settlement agreement, the July 2020 order finding plaintiff in contempt, and the October 2020 order imposing the $100-per-week fine. In doing so, the court noted the record supported a finding that plaintiff had not complied with the April 2020 order. *Id.* ¶ 44.

¶ 41    Plaintiff unsuccessfully petitioned for rehearing and for leave to appeal. See Ill. S. Ct., No. 126949 (May 26, 2021) (denying leave to appeal). The mandate was issued on July 1, 2021.

---

[2]In August 2020, plaintiff prematurely appealed the July 2020 contempt finding. See *In re Estate of Hayden*, 361 Ill. App. 3d 1021, 1026 (2005) (a contempt finding is not final and appealable unless a sanction is imposed). The appeal was docketed as Appeal No. 2-20-0452 and was dismissed on plaintiff's motion.

8

¶ 42    While the mandate was pending, the parties continued to address plaintiff's noncompliance with the April 2020 order. On December 17, 2020, the parties held an in-person inspection. They held another inspection on May 10, 2021, this time before the court. At the inspection's conclusion, defendants informed the court of various deficiencies in the production, tendering documents for the court's review. Defendants told the court, among other things, the clubhouse rental agreements had been redacted beyond the scope of the April 2020 order. Instead of making a finding of continued noncompliance, however, the court directed defendants to file a motion "pursuant to [Supreme Court Rule] 219 regarding [the in-court inspection] and any deficiencies regarding same."

¶ 43    Defendants filed a motion per the court's order, again asserting the clubhouse rental agreements were improperly redacted. Plaintiff responded and, notably, attached Srachta's July 2020 affidavit of completeness, together with its attachments.

¶ 44    In June 2021, the court determined plaintiff had still not purged the contempt and granted defendants leave to bring "appropriate [pretrial] motions *** stemming from [plaintiff's] failures to abide by the terms" of the April 2020 order. The court reserved calculation of the contempt fine pending the mandate's issuance. The issue of plaintiff's noncompliance, however, languished until May 2023.

¶ 45                                G. Discovery and Pretrial Motions

¶ 46    The parties' pattern of frenzied litigation continued as the matter proceeded to trial. Numerous discovery disputes led to several motions to compel, to quash subpoenas, for discovery sanctions, and for Rule 137 sanctions. The matter was set and reset for trial several times. A

9

different judge began presiding in October 2022 and ultimately scheduled trial to begin in May 2023.[3]

¶ 47    The parties filed several motions *in limine*, only one of which is relevant to this appeal. Per the court's June 2021 order, defendants sought, under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), an order striking counts I and II or barring evidence and testimony based on plaintiff's noncompliance with the records settlement and the April 2020 order. The trial court declined to strike counts I and II but otherwise reserved ruling, remarking the previous judge had never found what specific documents plaintiff had yet to produce per the records settlement.

¶ 48                               H. Bench Trial

¶ 49    The bench trial began on May 22, 2023, and continued over several nonconsecutive days. The claims remaining were counts I and II of the amended complaint insofar as they sought injunctive relief, count III of the amended complaint insofar as it sought damages, and counts VI and VII of defendants' counterclaim. The record does not contain a report of any of the trial proceedings. The record minimally shows that plaintiff presented its case on May 22 through May 25, 2023. On May 26, 2023, the court directed a finding in defendants' favor on count III of plaintiff's complaint, ruling that claim was "moot." Two additional trial dates took place in June 2023 and four additional trial dates took place in October 2023. The parties submitted written closing arguments, and the court took the matter under advisement.[4]

_____

[3]At one point, the trial was set for March 2022. However, just six weeks before the trial date, plaintiff moved for a substitution of judge for cause, contending the trial court's adverse rulings up to that point showed the court's impartiality might reasonably be questioned. *Cf. In re Estate of Wilson*, 238 Ill. 2d 519, 554 (2010) ("A judge's previous rulings almost never constitute a valid basis for a claim of judicial bias or partiality."). The motion was denied. The case was nevertheless assigned to a different judge because judicial assignments had administratively changed while the motion was pending.

[4]Plaintiff's first argument was stricken with leave to refile, because plaintiff had relied on evidence—including a new affidavit—that was not presented at trial. Plaintiff's second argument contained similar defects. The court nevertheless accepted plaintiff's second summation but stated it would disregard

¶ 50                              I. Trial Ruling and Posttrial Litigation

¶ 51        In April 2024, the court ruled from the bench. The record does not contain a report of the proceedings. According to the written order, the court ruled in plaintiff's favor on all remaining claims while noting its directed finding in defendant's favor on count III. As to counts I and II of plaintiff's complaint, the court found plaintiff established that Teresa had violated the Declaration "as detailed in open court" but failed to establish that Jerzy or Katarzyna had violated the Declaration. Thus, the court entered judgment against Teresa, enjoining Teresa "from making any changes to the common areas without prior express and written permission or authorization from the Association" and "from planting or placing any structures in the common area without prior express and written permission or authorization from [plaintiff]." The court granted plaintiff leave to petition for its "expense of enforcement" pursuant to the Declaration. Based on the parties' later filings, it appears the court limited plaintiff to seeking fees related to counts I and II of its amended complaint only insofar as those fees related to Teresa.

¶ 52        Teresa moved to reconsider the court's judgment on counts I and II of the amended complaint, and defendants moved to reinstate counts I through III of their counterclaim based on plaintiff's continued noncompliance with the records settlement and the April 2020 order. The court denied both motions.

¶ 53                                      J. Expense Petition

¶ 54        Plaintiff petitioned for expenses per the court's trial ruling. By separate motion, plaintiff requested leave to file a petition for "additional" attorney fees, seeking fees related to count III of the amended complaint and counts V, VI, and VII of the counterclaim. Plaintiff argued it had

---

any improper material. The court sanctioned plaintiff's counsel based on his conduct under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and awarded defendants $2,250 in attorney fees.

obtained the relief it sought in the amended complaint, and that it prevailed on counts V through VII of defendants' counterclaim. We will refer to this motion as the motion for additional fees.

¶ 55 In its petition and motion for additional fees, plaintiff sought $142,948.93, consisting of $140,385 in attorney fees, $728.93 in costs, and $1,835 in "damages." The damages included $1,085 related to the ash tree's removal. In its reply, plaintiff sought an additional $23,485 relating to the posttrial litigation, bringing the total attorney fees sought to $163,870.

¶ 56 Plaintiff's attorney submitted an affidavit in support of plaintiff's petition. Counsel attested he had nearly 20 years of experience and charged an hourly rate of $350 per hour, which was below the prevailing market rate for an attorney of his experience. He also attested this case was among the most contentious he had been involved with. He laid sole blame for this on defendants. Counsel attached a time-and-task log containing 230 separate entries, identifying the tasks performed (with varying detail), the date they were performed, by whom they were performed, and the hours expended. Counsel attached similar time-and-task logs in support of plaintiff's motion for additional fees and its request for posttrial attorney fees. In support of the request for "damages," counsel also attached an invoice dated August 1, 2020, showing the tree was removed at a cost of $1,000, and an April 2024 "estimate" showing the stump's removal would cost $85.

¶ 57 Defendants responded that plaintiff's petition failed to separate out the attorney fees related to obtaining the declaratory judgment and those related to enforcement. They also argued several entries on the time-and-task log lacked necessary specificity or reflected fees that were unnecessary, excessive, or beyond the scope of the trial ruling. Finally, defendants contended the fees were "highly disproportionate" to the amount involved in the litigation and would result in a windfall to plaintiff's attorney.

¶ 58 K. Further Proceedings on the Contempt Fine

12

¶ 59    While the expense petition was pending, the court preliminarily addressed the contempt fine. On August 6, 2024, the court assessed the $100-per-week contempt fine for 32 weeks (October 15, 2020, to June 22, 2021, omitting the 4 weeks between the appellate court's order staying the weekly contempt fine and its dispositive order). The court ordered defendants to provide a list of documents that had not been produced in accordance with the April 2020 order. It ordered plaintiff "to provide information on each document listed as to when, how, and in what manner the document was produced to" defendants. The court reserved ruling as to whom the fine was payable.

¶ 60    Defendants filed a list per the court's order. Defendants again noted, among other things, that plaintiff had produced clubhouse rental agreements that were redacted beyond the scope of the April 2020 order. Plaintiff did not contest this allegation and instead asserted the redactions were necessary because defendants had a history of harassing clubhouse users. Despite the court's order, plaintiff never specified when, how, and in what manner the documents identified by defendants were produced.[5]

¶ 61            L. The Trial Court's Ruling on the Expense Petition and Contempt Fine

¶ 62    The parties waived an evidentiary hearing on the expense petition and fine calculation. On October 9, 2024, the court vacated the preliminary fine, determined plaintiff was in contempt for 101 weeks, and assessed a $10,100 fine. The 101 weeks consisted of 2½ weeks before the appellate court stayed the $100-per-week fine and 98 weeks after the mandate in *Jagiello I* was issued until May 22, 2023, when trial commenced.

---

[5]In fact, the trial court ordered plaintiff to amend its original response because it did not make those specifications. Plaintiff's amended response likewise failed to do so.

¶ 63        Turning to plaintiff's expense petition, the court began by noting that plaintiff was seeking $140,385 in attorney fees. The court reiterated that, under the Declaration, plaintiff could recover the expenses of enforcement only insofar as the action was brought against Teresa, the sole party found to have violated the Declaration. Thus, any fees incurred before February 4, 2019, when Teresa was added as a party to the action, were not recoverable. Additionally, the court determined plaintiff could recover its expenses of enforcement only to the extent the present action was brought to enforce the Declaration; any expenses related to obtaining declaratory relief were not recoverable.

¶ 64        The court then addressed the time-and-task logs submitted by plaintiff's counsel. The court gave a nonexhaustive list of specific time entries that were unrelated to plaintiff's enforcement of the Declaration and a nonexhaustive list of entries that lacked specificity. It noted that specificity was especially necessary in this case "given the variety of issues dealt with during the course of litigation."

¶ 65        After considering the relevant law, its own experience, and its familiarity with the attorneys and subject matter, the court found plaintiff's counsel's $350 hourly rate was reasonable, and $20,500 was a reasonable fee for this case. The court concluded its ruling as follows:

> "The issues presented in this case were quite simple. The trial could have been completed in one day and could have been tried four years ago. While this Court has only handled this case for the last two years, it has had multiple occasions to review the court file containing an unfathomable amount of pleadings, motions, court dates, all unnecessary for this case. It is clear to the Court that the animosity between the parties and counsels of record have unnecessarily increased the length and cost of litigation.

14

Counsel for [plaintiff] argues that quote, 'the legal fees and expenses incurred by [plaintiff] are a direct result of [defendants'] calculated litigation strategies which strategies have increased the cost of litigation,' end quote. Such an argument is short-sided [*sic*] and ignores [plaintiff's] own conduct in driving the expenses to an astronomical amount with no basis and reasonableness all the while glossing over their own repeated failure to comply with court orders.

***

***. After considering the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client and whether there is a reasonable connection between the fees and the amount involved in the litigation, the Court awards $20,500 as a reasonable amount of attorney fees as it was able to determine from the fee petition related to the enforcement of Count 1 and Count 2 against Teresa."

¶ 66 The court also addressed plaintiff's motion for additional fees. The court noted most of the attorney fees for count III were incurred before Teresa became a party. Consistent with its ruling, the court disallowed those fees. The remainder of the fees related to a tree expert that defendants called at trial in support of count VI of their counterclaim. The court nevertheless awarded plaintiff $700 because the tree expert was used in relation to count II of the amended complaint. The court denied plaintiff's request for $1,085 in "damages" relating to the diseased ash tree's removal. In doing so, it rejected plaintiff's argument that plaintiff would not have incurred those "damages" had defendants allowed it to remove the tree earlier. The court noted plaintiff had not sought damages at trial and found, in any event, plaintiff's argument was speculative and not supported

15

by any evidence. It also concluded the damages were not related to the Declaration's enforcement but rather were the costs associated with "something [plaintiff] wanted to do." Finally, the court denied plaintiff's request for fees related to the counterclaim, rejecting plaintiff's argument that the counterclaim arose from common facts.

¶ 67     This appeal followed.[6]

¶ 68                                II. ANALYSIS

¶ 69     On appeal, plaintiff challenges the trial court's rulings on the expense petition and the contempt fine. Defendants have not filed a brief. As such, our review is guided by *First Capitol Mortgage Corp. v. Talandis*, 63 Ill. 2d 128 (1976). This court does not reverse by default when the appellee declines to participate. *Brzowski v. Brzowski*, 2014 IL App (3d) 130404, ¶ 15 (citing *Talandis*, 63 Ill. 2d at 131). Rather, under *Talandis*, we have three discretionary options: (1) if justice requires, we may search the record for the purpose of sustaining the trial court's judgment, (2) if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, we may decide the merits; and (3) if the appellant's brief demonstrates *prima facie* error that is supported by the record, we may reverse the trial court's judgment. *Talandis*, 63 Ill. 2d at 133.

¶ 70              A. Expense Petition and Motion for Additional Fees

¶ 71     Plaintiff first contends the trial court erred when it reduced the expenses plaintiff sought after trial. Plaintiff does not contend the trial court should have awarded the entire $166,433.93 that plaintiff sought. Rather, plaintiff requests that we increase the award by $74,480. Plaintiff also requests that this court award it a reasonable fee related to this appeal.

¶ 72                            1. *Standard of Review*

---

[6]Defendants filed a cross-appeal but have voluntarily dismissed it.

16

¶ 73    A party to a lawsuit must bear its own attorney fees and costs unless a statute or contract expressly authorizes a party to recover its fees and costs. *McNiff v. Mazda Motor of America, Inc.*, 384 Ill. App. 3d 401, 404 (2008). Here, the Declaration—a contract plaintiff was entitled to enforce (see *Chiurato v. Dayton Estates Dam & Water Co.*, 2017 IL App (3d) 160102, ¶ 39)—authorized the court to award attorney fees and costs to plaintiff as its "expense of enforcement."

¶ 74    Generally, we review a trial court's fee award for an abuse of discretion. *Northbrook Bank & Trust Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 61. To the extent the trial court here construed the Declaration's expense-shifting provision, our review is *de novo*. *Id.*

¶ 75    2. *The Declaration's Expense-Shifting Provision*

¶ 76    Plaintiff contends the trial court erred when it disallowed all the fees plaintiff incurred before February 4, 2019, when Teresa was added as a party to the litigation. The court's ruling was premised on the expense-shifting provision's language. The court construed the provision as allowing plaintiff to recover its attorney fees only to the extent it prevailed in the action, that is, only the fees related to proving Teresa violated the Declaration and obtaining injunctive relief against her. We agree with the trial court.

¶ 77    Courts must construe expense-shifting provisions "to mean nothing more—but also nothing less—than the letter of [their] text." (Internal quotation marks omitted.) *Bjork v. Draper*, 381 Ill. App. 3d 528, 544 (2008). The Declaration's expense-shifting provision states as follows:

"[Plaintiff] *** shall have the right to enforce [the Declaration] by any proceeding at law or in equity, against any person or persons violating or attempting to violate [the Declaration], to restrain violation, to require specific performance, and/or to recover damages[.] ***. The expense of enforcement by [plaintiff] shall be chargeable to the Owner

17

of the Lot violating [the Declaration] and shall constitute a lien on the Lot, collectible in the same manner as assessments hereunder."

¶ 78　　　　Strictly construed (*id.*), the expense-shifting provision gives plaintiff the "right to enforce" the Declaration and an attendant right to recover its "expense of enforcement." The right to enforce consists of the right to bring a court proceeding to restrain violation, require specific performance, or recover damages. The right to enforce and its attendant right to expenses, however, exists *only* against a person who violates or attempts to violate the Declaration.

¶ 79　　　　The trial court found that Teresa was the only defendant who violated the Declaration. Plaintiff does not contest this finding. As such, plaintiff's right to enforce and its attendant right to expenses existed only as to Teresa. Because Jerzy was not found to have violated the Declaration, plaintiff had no right to recover the expenses it incurred while he was the sole defendant. Accordingly, we conclude the trial court properly excluded the attorney fees incurred before February 4, 2019, when Teresa became a party to the action.

¶ 80　　　　The trial court also found the Declaration did not allow plaintiff to recover fees related to the declaratory relief it sought in the amended complaint. We agree with the trial court that obtaining declaratory relief is distinct from enforcing a contract. See *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 397 (1993) (noting "a breach of contract claim is an action at law and is not a proper subject for a declaratory judgment"). Further, the expense-shifting provision does not list a declaratory judgment among the relief plaintiff may seek in a proceeding to enforce the Declaration. As such, the fees related to plaintiff's efforts to obtain declaratory relief were outside the expense-shifting provision's scope.

¶ 81　　　　　　　　　　　　　　　　3. *The Fee Award*

18

¶ 82    Aside from the court's construction of the expense-shifting provision, plaintiff argues the court abused its discretion when it "drastic[ally] reduced" the fees without giving specific reasons for each reduction.

¶ 83    The party seeking fees must submit evidence from which the court can determine their reasonableness. *Sampson v. Miglin*, 279 Ill. App. 3d 270, 281 (1996). The petition must include "detailed records containing facts and computations upon which the charges are predicated and specifying the services performed, by whom they were performed, the time expended[,] and the hourly rate charged." (Internal quotation marks omitted.) *Id.*

¶ 84    Trial courts have broad discretion when they award attorney fees. *Pitts v. Holt*, 304 Ill. App. 3d 871, 872 (1999). The ultimate question when setting fees is their reasonableness. See *McNiff*, 384 Ill. App. 3d at 404. In determining whether a fee is reasonable, a court must consider several factors, no single one of which is controlling:

> "(1) the skill and standing of the attorney employed, (2) the nature of the cause, (3) the novelty and difficulty of the questions, (4) the amount and importance of the subject matter, (5) the degree of responsibility in the management of the case, (6) the time and labor required, (7) the usual and customary charges in the community, and (8) the benefits resulting to the client." *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001).

The trial court is best situated to address these factors. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2021 IL App (1st) 200753, ¶ 101.

¶ 85    As noted, we may reverse a fee award only when the trial court abuses its discretion. *Abbas*, 2018 IL App (1st) 162972, ¶ 61. This standard does not allow us to reverse merely because we would have reached a different conclusion. *Father & Sons Home Improvement II, Inc. v. Stuart*,

19

2016 IL App (1st) 143666, ¶ 48. Rather, we give deference to the trial court and will reverse only if no reasonable person would make the same ruling. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 23.

¶ 86        We begin with plaintiff's contention that the trial court erred when it declined to award posttrial attorney fees without explaining its decision to do so. First, we agree with the premise of plaintiff's argument—that is, the court had authority to award the posttrial fees as an expense of enforcement. The posttrial proceedings, like an appeal, were a continuation of the proceedings. See *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 953 (2004). Plaintiff, having obtained judgment against Teresa, was entitled to recover the fees related to defending the judgment.

¶ 87        Plaintiff made an explicit request for $23,485 in posttrial attorney fees and submitted an affidavit and a time-and-task log to support its request. During the October 2024 hearing, the trial court noted plaintiff was seeking $140,385 in attorney fees. Notably, this sum does not include the $23,485 in posttrial fees that plaintiff sought. ($163,870 – $23,485 = $140,385). Further, the court made no mention of plaintiff's request for posttrial fees in its ruling. The record thus shows the court either failed to rule on or implicitly denied plaintiff's request for posttrial fees. The court, in any event, never gave any reasons for refusing plaintiff's request.

¶ 88        When a trial court reduces the fees sought by a prevailing party, it must "make specific findings documenting its reasons for reducing the amount of the fee petition." *Casey v. Rides Unlimited Chicago, Inc.*, 2022 IL App (3d) 210404, ¶ 29. A trial court abuses its discretion when it does not do so. *Id.* Because the trial court never gave any reason for denying plaintiff's request for posttrial attorney fees, we conclude the trial court abused its discretion in this limited respect. We will address the appropriate remedy at the conclusion of our analysis of this issue.

¶ 89    Turning to the remainder of plaintiff's expense petition, we cannot say the court abused its discretion in determining that $20,500 was a reasonable attorney fee for this case. The record shows the trial court thoughtfully considered plaintiff's expense petition, weighed the relevant factors, and gave reasons for its reduction of the fees sought by plaintiff. Relying on its familiarity with the case and the attorneys and its own experience, the court placed significant weight on the nature of the case and the novelty and difficulty of the issues presented and found the issues were "quite simple" and could have been tried much sooner and in a single day. The court noted the record contained an "unfathomable" amount of pleadings, motions, and court appearances that were not necessary to the case and needlessly increased the scope and cost of the litigation.

¶ 90    The record supports the trial court's assessment of the nature of the case and the issues involved in it. See *Powers*, 326 Ill. App. 3d at 515. The parties' pleadings set forth straightforward legal issues that did not require complex sets of proof. We agree with the trial court that many of the pleadings, motions, and court hearings in this matter were unnecessary to the relief obtained and needlessly increased the cost of the litigation. See *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 104 (noting "the time charged for must be necessary to handle the matter involved"). We likewise agree with the trial court that plaintiff shares much of the blame for this fact and plaintiff's deflection ignores its own scorched-earth strategy and refusal to comply with the court's orders, which unreasonably increased defendants' expenses.

¶ 91    Plaintiff quibbles with the trial court's assessment of the time-and-task log that counsel attached to its petition. Plaintiff argues both that the trial court failed to give adequate explanations as to each reduction and incorrectly determined the identified billing entries were not recoverable. As to the first point, the requirement that the court give reasons for reducing fees does not require a line-by-line analysis of the billing entries and reasons for each individual reduction. *In re*

21

*Marriage of Kane*, 2016 IL App (2d) 150774, ¶¶ 29-31. And in any event, the court's explanation here was sufficient for us to assess the award's reasonableness. As to the second point, the trial court's exclusion of recoverable fees or inclusion of nonrecoverable fees is inconsequential if the award as a whole is not grossly excessive or inadequate. *Sampson*, 279 Ill. App. 3d at 281.

¶ 92 Simply put, the trial court is in a superior position to weigh the relevant factors and determine a reasonable attorney fee for this case. *Pepper Construction*, 2021 IL App (1st) 200753, ¶ 101. The trial court weighed all of the evidence, as well as its own experience and knowledge of the case and attorneys, and determined $20,500 was a reasonable fee for this case. See *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 139 (2008) (noting the trial court may consider "its own knowledge and experience to assess the time required to complete particular activities"). Other than in the limited regard set forth above (*supra* ¶¶ 86-88), plaintiff has provided us with no basis on which to find the award was so grossly inadequate as to be unreasonable. See *Sampson*, 279 Ill. App. 3d at 281. As such, we reverse in part the court's ruling on the fee petition and otherwise affirm.

¶ 93                    4. *Plaintiff's Motion for Additional Fees*

¶ 94 Plaintiff also argues the trial court abused its discretion when it denied its motion for additional fees. Specifically, plaintiff challenges the court's denial of attorney fees and "damages" related to count III of the amended complaint and counts V and VI of the counterclaim. Plaintiff does not challenge the court's denial of attorney fees related to count VII of the counterclaim.

¶ 95 After trial, in April 2024, the court determined plaintiff could seek fees related to counts I and II, but not count III of the amended complaint. Because this hearing is absent from the report of proceedings, it is unknown what the court's reasoning was at the time.

¶ 96 Plaintiff's motion for additional fees requested $6,125 in attorney fees and $1,085 in "damages" related to count III. The trial court denied in part plaintiff's request. Consistent with its interpretation of the expense-shifting provision, the court disallowed any fees that were incurred before Teresa was a party to the action. For the reasons stated *supra* ¶¶ 77-79, we conclude the trial court did not abuse its discretion when it denied the attorney fees incurred on count III before Teresa became a party.

¶ 97 The remainder of the attorney fees that plaintiff sought related to plaintiff's board discussions and defendants' tree expert. The court allowed $700 regarding the expert, because some of his testimony was used in relation to count II of the amended complaint. The expert was not called at trial in relation to count III—the only relief sought in that count was granted in April 2020, well before trial began. The court entered a directed finding at trial on count III after plaintiff presented its evidence, noting the claim was moot. Rather, defendants called the expert in relation to *count VI of defendants' counterclaim*. Thus, plaintiff's request for any more expert-related fees is actually encompassed by its claim that the trial court erred when it denied fees related to the counterclaim.

¶ 98 On that point, plaintiff presents a disorganized and undeveloped argument as to why it was entitled to fees for its defense of those claims. Plaintiff appears to argue these expenses should have been awarded because counts V and VI of the counterclaim and counts I and II of the amended complaint arose out of a common core of facts. While plaintiff refers to some authority to support its position, it does not offer any reasoned argument as to how the claims arose from the same facts. See *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010) (noting that both argument and citation of authority are required under Illinois Supreme Court Rule 341 (eff. October 1, 2020)). As such,

23

plaintiff has forfeited this contention. *Vancura*, 238 Ill. 2d at 369-70; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We need not address it further. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 34.

¶ 99    As to its claim for $1,085 in "damages," plaintiff's theory was that it would not have incurred those costs had defendants allowed it to remove the ash tree in 2018, when other trees were being removed. We agree with the trial court that there was no evidence to support plaintiff's argument. First, to the extent any evidence on this issue was presented at trial, plaintiff failed to supply this court with the report of the trial proceedings. Any doubts arising from the omission must be resolved against plaintiff. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-392 (1984). The remaining evidence in the record was plaintiff's counsel's affidavit, the August 2020 invoice showing the tree had been removed, and the 2024 estimate of the cost to remove the stump. Those documents, however, do not show plaintiff would not have incurred the costs but for defendants' conduct. As such, we affirm the trial court's denial of plaintiff's motion for additional fees.

¶ 100    5. *Appellate Attorney Fees*

¶ 101    Plaintiff also requests that we award it reasonable attorney fees related to this appeal. This appeal is a continuation of the proceedings below. *Erlenbush*, 353 Ill. App. 3d at 953. Plaintiff has been successful in one aspect of this appeal and, as such, is entitled to a reasonable attorney fee as an expense of enforcement.

¶ 102    6. *Remedy*

¶ 103    We have determined the trial court abused its discretion when it denied plaintiff's request for posttrial fees. We have also determined plaintiff is entitled to a reasonable fee for this appeal. Plaintiff requests that we both increase the fee awarded by the trial court and award it the attorney fees ourselves.

24

¶ 104    While we are sympathetic to the efficiency of deciding these matters without remand, the proper course of action is to remand the matter to the trial court. *Id.* On remand, the trial court should award plaintiff a reasonable attorney fee for the posttrial proceedings based on the evidence already of record. The court should award plaintiff a reasonable fee for this appeal upon a petition filed by plaintiff.

¶ 105                              B. Contempt Fine

¶ 106    Plaintiff next contends the trial court erred by assessing the $10,100 fine. Plaintiff's argument on this point jumps around and in part seemingly challenges the underlying contempt order that was affirmed in *Jagiello I*. At base, however, plaintiff argues it purged the contempt on December 17, 2020, when the parties conducted a second in-person inspection or, at the latest, on May 10, 2021, when the parties conducted a third in-person inspection, this time in court. Thus, plaintiff maintains, the contempt fine should have been significantly lower. Further, plaintiff notes, defendants never identified—and the court never made a finding—as to what documents were not produced, leaving it with no way to purge the contempt.

¶ 107    1. *The Law of the Case Doctrine Bars Relief from the Underlying Contempt Order*

¶ 108    To the extent plaintiff challenges the underlying contempt order, we may not grant plaintiff any relief, as this court has already affirmed it. *Jagiello I*, 2020 IL App (2d) 200601-U, ¶¶ 46, 48. Our affirmance rendered the contempt order unassailable in this appeal. *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8 (the law-of-the-case doctrine bars relitigation of an issue previously decided by the appellate court).

¶ 109                              2. *Standard of Review*

¶ 110    That said, we may address plaintiff's argument that it purged the contempt order. This is a question of fact, which is generally subject to manifest-weight review. See *People v. Morgan*, 2025

25

IL 130626, ¶ 20. Here, however, the trial court did not hold an evidentiary hearing and instead considered only documentary evidence regarding plaintiff's compliance with the contempt order's purge provision. As such, we review *de novo* the court's determination that plaintiff failed to purge the contempt and its subsequent imposition of the $10,100 fine. *Id.* ¶ 51.

¶ 111                    3. *Plaintiff's Noncompliance with the April 2020 Order*

¶ 112          The record confirms plaintiff never purged the contempt. To purge, plaintiff was required to comply with the April 2020 order by producing the requested records without any redactions except "personal identification information, such as social security numbers, full bank account numbers, personal phone numbers, etc."[7]

¶ 113          Plaintiff has continuously relied on Srachta's July 2020 affidavit, which attached all the records plaintiff had purportedly produced per the April 2020 order. Our review shows several of those records were redacted beyond the scope of the April 2020 order.

¶ 114          For example, the records settlement and the April 2020 order required plaintiff to produce "copies of all contracts, leases, or other agreements entered into by [plaintiff's] board" from January 1, 2017, to December 6, 2019. As was noted by defendants throughout the proceedings, plaintiff produced clubhouse rental agreements from which the renters' first and last names, addresses, and signatures were redacted. These redactions went beyond what was permitted by the April 2020 order.

¶ 115          In June 2021, plaintiff continued to rely on the affidavit as establishing it had purged the contempt. After June 2021, plaintiff never supplemented its proof that it had produced the

---

[7]The court's order was consistent with Illinois Supreme Court Rule 138 (eff. Jan. 1, 2018), which permits the redaction of "personal identity information," including Social Security and individual taxpayer-identification numbers, driver's license numbers, financial account numbers, and debit and credit card numbers, as well as any other information the court may order to be redacted.

clubhouse rental agreements in a manner that complied with the court's orders. In fact, it conceded in its 2024 filing that it had never done so, instead claiming the redactions were necessary to prevent defendants from harassing the clubhouse renters. Put simply, the record establishes beyond doubt that plaintiff never purged the contempt. The trial court properly imposed the sanction—the $100-per-week fine—set forth in the contempt order.

¶ 116        Before moving on to the contempt fine's amount, we note plaintiff places significant weight on the trial court's remark, during the May 2023 hearing on defendants' motion *in limine*, that the previous judge had never found what specific documents plaintiff had failed to produce. This remark, however, was not supported by the record, and the trial court later recognized as much in its October 2024 order. Indeed, in June 2021, after the failed in-court inspection, the court found plaintiff had not purged the contempt based in part on its failure to produce compliant clubhouse rental agreements.

¶ 117                                4. *The Contempt Fine's Amount*

¶ 118        We now move on to the contempt fine's amount. The trial court found plaintiff was in contempt for 101 weeks and imposed a $10,100 fine. The 101 weeks consisted of 2½ weeks before the appellate court stayed the fine (October 15, 2020, to November 2, 2020) and 98 weeks after the mandate was returned to the trial court until the first day of trial (July 1, 2021, to May 22, 2023). Given plaintiff *never* purged the contempt, there is no basis to reduce the fine. In fact, the court could have imposed a significantly larger fine. Almost 171 weeks passed between the mandate's return and the date the court calculated the fine (July 1, 2021, to October 9, 2024), yet the court imposed the fine for 101 weeks. In any event, because no request to increase the fine is before the court, we affirm the $10,100 fine.

¶ 119                        5. *Attorney Fees Related to Enforcement of the Record Settlement*

¶ 120    As a final matter, plaintiff requests that we reverse the January 2021 order awarding defendants $5,643.75 in attorney fees related to its enforcement of the settlement. On this point, plaintiff devoted one sentence of its argument: "The circuit court erred when it granted attorney fees in the amount of $5,642.75 [*sic*] in the January 26 [*sic*], 2021 Order." This sentence falls well short of an adequately developed argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Vancura*, 238 Ill. 2d at 369-70. As such, plaintiff forfeited this contention, and we will not address it further. *Kic*, 2011 IL App (1st) 100622, ¶ 34.

¶ 121                              III. CONCLUSION

¶ 122    For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Du Page County. We remand for the trial court to award plaintiff a reasonable fee for the posttrial proceedings and for prosecuting this appeal.

¶ 123    Affirmed in part; reversed in part; remanded with directions.